NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBERT GREGORY, SAMUEL GREGORY, and CHRISTOPHER GREGORY,

                Plaintiffs,

v.

W. PATRIC GREGORY III,

                Defendant.

**OPINION**
Cv. No. 15-00320

**Walls, Senior District Judge**

    Plaintiffs Robert Gregory, Samuel Gregory, and Christopher Gregory bring an action for defamation and libel against their brother, Defendant W. Patric Gregory III, under New Jersey state law. Defendant moves to dismiss, claiming that his statements are protected by the "family relationships" privilege. The Court decides this motion without oral argument. Fed. R. Civ. P. 78. Defendant's motion to dismiss is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

    This case arises out of a dispute between siblings over a family business. Plaintiffs Robert Gregory, Samuel Gregory, and Christopher Gregory and Defendant W. Patric Gregory III ("Patric Gregory") are brothers. Amended Complaint, Declaration of Xiao Sun in Support of Def. Mot. Dismiss, ECF No. 15-2 Ex. A ¶¶ 1-5. Along with their siblings Michael Gregory, Mary Gregory O'Connor, Elizabeth Gregory, and James Gregory, the parties are the grandchildren of William P. Gregory, Sr., who in 1902 founded New Jersey Galvanizing and Tinning Works, Inc. ("NJG"), a company "in the business of hot dip galvanizing of structural steel and steel components." *Id.* ¶¶ 6, 8-9. The Gregory siblings' father, William P. Gregory, Jr.,

1

took over NJG and operated it until 1982. *Id.* ¶ 9. In 1976, William P. Gregory, Jr., his children, and NJG entered into an Option Agreement that awarded each of the Gregory siblings 157.71 Class A preferred shares, 1,357.14 Class B preferred shares, 2 Class A (voting) common shares, and 1,111 Class B common shares in NJG. Opp. Mot. Dismiss, ECF No. 18 at 6-7. The Option Agreement also provided terms under which NJG could call for the redemption of these shares. *Id.* at 7. In 1980, Defendant Patric Gregory redeemed all of his stock in NJG in connection with his purchase of another steel galvanizing company, but the remaining Gregory siblings kept their shares. *Id.* at 7. In 1990, Plaintiff Robert Gregory became President of NJG. ECF No. 15-2 Ex. A ¶ 1.

## I. The NJG stock redemption dispute

In 2008, Robert Gregory offered to purchase his siblings' outstanding shares of NJG common stock for a lump sum of $150,000 per stockholder. *Id.* ¶ 21. The Gregory siblings did not respond, and Robert withdrew his offer on August 31, 2008. *Id.* ¶ 22. In August 2011, Robert Gregory, acting as President of NJG, caused NJG to issue a call notice for the outstanding stock held by the other Gregory siblings. ECF No. 15-2 Ex. A ¶ 23. In response, Michael Gregory, Mary Gregory O'Connor, Elizabeth Gregory, and James Gregory filed a complaint against Robert Gregory, Samuel Gregory, Chris Gregory, NJG, and Five Roses, LLC, another company owned by Robert, in the Superior Court of New Jersey, Chancery Division, Essex County seeking to enjoin the redemption of their shares and alleging shareholder oppression, breach of fiduciary duty, conspiracy, and the taking of a corporate opportunity. *Id.* ¶ 24, ECF No. 18 at 7-8. Patric Gregory was not a party to this action.

An arbitration hearing was held in April 2013, and the arbitrator issued relief against NJG in an Abbreviated Reasoned Decision on June 6, 2013. The arbitrator adjusted the "book value"

of NJG and awarded Michael, James, Mary, and Elizabeth a total of approximately $1.5 million for their shares. ECF No. 15-2 Ex. A ¶ 25-31. Michael, James, Mary, and Elizabeth filed an application to modify the Award, which the arbitrator denied. *Id.* ¶ 32. They then filed an application for an Order to Show Cause in New Jersey court, seeking the appointment of a fiscal agent and/or receiver for NJG, temporary restraints, the imposition of constructive trust and equitable liens, confirmation of the Arbitration Award, and expedited discovery. *Id.* ¶ 33. The court held that Michael, James, Mary, and Elizabeth were not "oppressed minority shareholders" and that Chris, Robert, and Samuel did not engage in wrongdoing, entered an order confirming the Arbitration Award, and declined to grant the other relief sought. *Id.* ¶ 35-36. Michael, James, Mary, and Elizabeth have appealed this order, and review is pending. *Id.* ¶ 37. In the meantime, NJG began making payments for the redemption of the siblings' stock on July 1, 2014. *Id.* ¶ 38.

## II. Defendant Patric's defamatory binder

In February 2014, Defendant Patric Gregory allegedly distributed a binder to fifteen members of the Gregory family, including Elizabeth, Michael, James, and Mary and Plaintiffs Robert, Chris, and Samuel, describing his "fact-based take" on his siblings' NJG stock redemption dispute ("the Binder"). *Id.* ¶ 39-41. The Binder included numerous statements that Plaintiffs claim are false and defamatory, including that:

a) Plaintiffs engaged in a "persistent pattern of malfeasance, deceit, and self-dealing,"
b) Plaintiffs "engaged in business practices that have bordered on criminal,"
c) "In order to pay as little as possible to Claimants for the redemption of their share, the Management of [NJG] deliberately violated financial and accounting conventions – and the law – in an effort to understate the company's value,"

d) "[Five Roses LLC] became a convenient conduit to funnel assets out of NJG and into a parallel firm owned and controlled exclusively by Robert and his handpicked confederate,"

e) [Five Roses LLC and NJG] are one in the same . . . [e]xcept when it comes to hide assets,"

f) "The only reason these transfers were made was to depress the reported value of NJG and thereby depress the value of the redemption of shares,"

g) "The bookkeeping for both companies was designed to deceive," and "[accounting entries] were 'made up,' with no support whatsoever, all in an effort to depress and conceal the true value of NJG," and

h) Robert was guilty of accepting an "illegal kickback" from a business called USA Iron.

*Id.* ¶ 42.

### III. The defamation action

Plaintiffs Robert Gregory, Samuel Gregory, and Christopher Gregory filed a one-count complaint against Defendant Patric Gregory in the Superior Court of New Jersey, Essex County, Law Division on December 24, 2014 alleging defamation/libel and seeking compensatory damages, punitive damages, interest, attorneys' fees, and costs, and other such awards as the court deems appropriate for Defendant's allegedly false and defamatory statements in the Binder. Complaint, ECF No. 1-2. On January 16, 2015, Defendant Patric Gregory filed a notice of removal to this Court. Notice of Removal, ECF No. 1. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because Defendant is a resident of Connecticut and Plaintiffs are residents of New Jersey, New York, and Massachusetts, respectively, and because "the amount in controversy appears from the face of the Complaint to exceed $75,000." *Id.* ¶¶ 5-6.

4

On July 31, 2015, Defendant Patric Gregory filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), Mot. Dismiss, ECF No. 15, arguing that his statements are protected by a qualified common-interest privilege for statements made by and between family members. *Id.* at 11-12. Plaintiffs filed an opposition brief on September 8, 2015, ECF No. 18, and Defendant filed a reply memorandum on September 15, 2015. ECF No. 21.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for a judgment on the pleadings. A motion under Rule 12(c) is decided under the same standards which apply on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

A party moving for judgment on the pleadings under Rule 12(c) must demonstrate that there are no disputed material facts and that judgment should be entered in its favor as a matter of law. *See Jablonski v. Pan Amer. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988). When reviewing a motion for judgment on the pleadings, the court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.*

Under New Jersey law, qualified privilege to a defamation claim is an affirmative defense. *Mangan v. Corporate Synergies Group, Inc.*, 834 F. Supp. 2d 199, 209 (D.N.J. 2011). A party asserting a qualified privilege in a motion to dismiss, as Defendant does here, bears the burden of establishing that the existence of the privilege is "apparent from the face of the complaint." *Id.* (citing *Bethel v. Jendoco*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978)).

## DISCUSSION

### I. The complaint adequately pleads defamation.

"Defamation imposes liability for publication of false statements that injure the reputation of another." *Singer v. Beach Trading Co., Inc.*, 379 N.J. Super. 63, 80 (N.J. App. Div. 2005) (quoting *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 765 (N.J. 1989)). To establish defamation under New Jersey law, a plaintiff must show "(1) that defendant[ ] made a false and defamatory statement concerning [plaintiffs]; (2) that the statement was communicated to another person (and not privileged); and (3) that defendant[ ] acted negligently or with actual malice." *G.D. v. Kenny*, 205 N.J. 275, 292-93 (N.J. 2011). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." *Id.* at 293 (internal citations omitted). To determine

whether a statement is defamatory, the Court must "consider the content, verifiability, and context of the challenged statement[ ]." *Murphy v. Millenium Radio Group LLC*, 650 F.3d 295, 310 (3d Cir. 2011) (citing *Ward v. Zelikovsky*, 136 N.J. 516, 529 (N.J. 1994)). "A statement falsely attributing criminality to an individual is defamatory as a matter of law." *Kenny*, 205 N.J. at 293 (citing *Romaine v. Kallinger*, 109 N.J. 282, 290 (N.J. 1988)).

Viewing the facts presented in the pleadings "in the light most favorable to the nonmoving party," *Jablonski*, 863 F.2d at 290, the Court finds that the complaint adequately pleads that Defendant Patric Gregory made false and defamatory statements concerning the Plaintiffs. The complaint identifies eight specific statements in the Binder that Plaintiffs claim are false and defamatory, including that Plaintiffs engaged in a "persistent pattern of malfeasance, deceit, and self-dealing," that their actions "bordered on criminal," and that Robert Gregory accepted an "illegal kickback" from another business. ECF No. 1-2 ¶ 42. The statements alleging criminal activity are defamatory as a matter of law, *Kenny*, 205 N.J. at 293, and the remaining statements allege that Plaintiffs engaged in unsavory business dealings and "tend[ ] so to harm [their] reputation . . . as to lower [them] in the estimation of the community or to deter third persons from associating or dealing with [them]." *Govito v. West Jersey Health System, Inc.*, 332 N.J. Super. 293, 305 (N.J. App. Div. 2000) (quoting *Restatement (Second) of Torts* § 559 (1977)). The complaint also alleges that all of the allegedly defamatory statements in the Binder "are false, and are contrary to the findings of the arbitrator in his Reasoned Decision, and the ruling of the Court in upholding the arbitrator's Reasoned Decision and Award." ECF No. 15-2 Ex. A ¶ 43. Though Defendant "maintains the truth of his statements," ECF No. 15 at 11, he does not explicitly argue in his motion to dismiss that any specific statements are either (a) not defamatory or (b) true.

The complaint also adequately alleges that Defendant published the statements to third parties other than plaintiffs, namely the twelve other members of the Gregory family who received the Binder, ECF No. 15-2 Ex. A ¶¶ 39, 46, and that "Defendant's defamatory publication was made with malice, or, at the very least, fault amounting to negligence." *Id.* ¶ 47.

## II. Defendant Patric Gregory does not establish that a qualified "family relationships" privilege defense is available.

The remaining question is whether Defendant's statements are privileged. Whether an allegedly defamatory statement is privileged is a question of law for the Court to decide. *Professional Recovery Services, Inc. v. General Elec. Capital Corp.*, 642 F. Supp. 2d 391, 401 (D.N.J. 2009) (citing *Kadetsky v. Egg Harbor Twp. Bd. of Educ.*, 82 F. Supp. 2d 327, 344 (D.N.J. 2000)). As discussed, Defendant has the burden of establishing that a qualified privilege defense is available from the face of the complaint. *Mangan*, 834 F. Supp. 2d at 209. He fails to meet his burden here.

Defendant argues that his statements in the Binder are protected by "a subset of the common-interest privilege that applies specifically to statements made by and between family members." ECF No. 15 at 18. Importantly, though, Defendant acknowledges that New Jersey courts have never recognized this supposed "family-matters" privilege. *Id.* at 20. Nevertheless, Defendant argues that this Court should recognize the privilege, pointing out that the New Jersey Model Civil Jury Charge for private defamation claims "specifically recognizes the existence of a qualified privilege where the declarant was acting in a lawful manner with the view of protecting the well-being of his/her immediate family member(s) or one or more immediate family members of the person to whom the statement was communicated." ECF No. 15 at 20 (citing New Jersey Model Jury Charge (civil) 3.11B "Private Defamation" (June 2014), at ¶ 5).

8

He also states that the Restatement of Torts recognizes a conditional privilege for "family relationships." *Id.* at 22-23 (citing Restatement (Second) of Torts § 597 (1977)). This qualified privilege applies "if the circumstances induce a correct or reasonable belief" either that "(a) there is information that affects the well-being of a member of the immediate family of the publisher, and (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the well-being of the member of the family;" or that (a) information affects the well-being of an immediate family member of the "recipient or of a third person," (b) the recipient's knowledge "will be of service in the lawful protection of the well-being" of the family member, and (c) the recipient has either "requested the publication of the defamatory manner" or "is a person to whom its publication is otherwise within generally accepted standards of decent conduct." Restatement (Second) of Torts § 597 (1977).

New Jersey courts have cited the Restatement to support the recognition of other qualified privileges. *See, e.g., Bainhauer v. Manoukian*, 215 N.J. Super. 9, 36 n.11 (N.J. App. Div. 1987) (recognizing a qualified privilege for communications involving "the quality of health care" provided to the public and citing the Restatement's conditional privilege for "protection of the publisher's interest," § 594, "protection of the interest of recipient or a third person," § 595, and "common interest," § 596). Absent clear direction from the state court, though, this Court declines to extend New Jersey law to recognize a special "family relationships" privilege.

### III. Defendant does not establish that a traditional qualified privilege is available from the face of the complaint.

Because Defendant claims his statements are protected by "a subset of the common-interest privilege," ECF No. 15 at 18, the Court applies established New Jersey standards to

determine whether Defendant demonstrates the existence of a traditional qualified "common-interest" privilege. Under New Jersey law, qualified privilege applies to "[a] communication made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty . . . if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable." *Professional Recovery Services*, 642 F. Supp. 2d at 400 (quoting *Williams v. Bell Tel. Lab., Inc.*, 132 N.J. 109, 121 (N.J. 1993)).

To determine whether a qualified privilege applies, the Court looks to "(1) the appropriateness of the occasion on which the defamatory information is published, (2) the legitimacy of the interest thereby sought to be protected or promoted, and (3) the pertinence of the receipt of that information by the recipient." *Id.* (citing *Bainhauer*, 215 N.J. Super. at 37).

In cases where courts have recognized a qualified privilege, defendants have demonstrated that they promoted a clear, legitimate interest by sharing defamatory information with particular recipients who had a shared interest in that information. *See, e.g., Professional Recovery Services*, 642 F. Supp. 2d at 401 (qualified privilege applied to defendants' reports to bank fraud and risk departments that plaintiff was stealing confidential information from banks' clients because defendant and banks had common interest in preventing identity theft); *Govito*, 332 N.J. Super. at 311-12 (qualified privilege applied to defendant nurse's statement to supervisor that plaintiff nurse stole prescription drugs and was a drug addict because the parties shared a common interest in providing efficient and effective health services); *Bainhauer*, 215 N.J. Super. at 37-38 (common interest privilege applied to defendant surgeon's statements to hospital's chief of anesthesia, other surgeons, and chairman of hospital executive committee that

plaintiff anesthesiologist had caused death of patient because the parties shared a common interest in "matters directly affecting the quality of health care" provided to the public).

Defendant claims that he wrote and distributed the Binder "out of concern for the welfare of his siblings and their familial relations, as well as the Gregory family legacy." ECF No. 15 at 20. He claims that "providing perspective for the individual family members as to their relations with each other and to the legacy of the family going forward," *id.* at 22, was an action concerning the "well-being" of his family members, as protected under Section 597 of the Restatement of Torts. Defendant asserts, without invoking any authority, that "[w]hat constitutes the 'well-being' of an individual's family covers almost any issue that a family might have to deal with." *Id.*

To repeat, New Jersey has not adopted the Restatement's "family relationships" privilege or the provision protecting statements regarding the "well-being" of family members. And Defendant does not explain how, as a non-party to the NJG stock redemption dispute, his "perspective" was of any value to Michael Gregory, Mary Gregory O'Connor, Elizabeth Gregory, and James Gregory, who were all active litigants and presumably already had access to any non-false information Defendant provided in the Binder. Nor does Defendant explain how his statements were relevant to the remaining Binder recipients, none of whom are alleged to have had any interest in the NJG stock redemption dispute – or to have had any contact with Plaintiffs at all. That Defendant apparently "felt compelled" to share the Binder with his family members, *id.* at 27, is insufficient: there "is not enough information [in the complaint] for the Court to assess whether their receipt of the statements was pertinent," so recognizing a qualified privilege at this point is inappropriate. *Cruz v. HSBC*, 2010 WL 2989987, at *5 (D.N.J. July 26, 2010) (applying *Bainhauer* factors where defendants argued that defamatory communications to

11

company employees and management about plaintiff's violation of company computer policy were privileged, and holding that it was "not clear from the face of the Complaint that Defendants are entitled to a qualified privilege" because the complaint did not sufficiently discuss the common interests of recipients related to computer policy and did not provide enough information to assess "the pertinence of the communication to those who received the information").

### IV. Even if a qualified privilege did apply, determining whether Defendant abused this privilege would be inappropriate at this stage.

When a qualified common-interest privilege does apply to a defendant's statements, the privilege is not absolute and may be lost through abuse. *Feggans v. Billington*, 291 N.J. Super. 382, 394 (N.J. App. Div. 1996). A qualified privilege is abused if "(1) the publisher knows the statement is false or the publisher acts in reckless disregard of its truth or falsity; (2) the publication serves a purpose contrary to the interests of the qualified privilege; or (3) the statement is excessively published." *Williams*, 132 N.J. at 121 (internal citations omitted). Though Defendant has the burden of establishing the existence of a qualified privilege, Plaintiffs have the burden of proving abuse of the privilege by clear and convincing evidence. *Feggans*, 291 N.J. Super. at 395 (citing *Williams*, 132 N.J. at 121). Whether Defendant has abused the privilege is a question for the jury. *Id.* (citing *Erickson v. Marsh & McLennan Co.*, 117 N.J. 539, 566 (N.J. 1990)); *Bainhauer*, 215 N.J. Super. at 40-41 ("[T]he court determines 'whether the occasion upon which the defendant published the defamatory matter gives rise to a privilege' and the jury determines 'whether the defendant abused a conditional privilege.'") (quoting *Restatement*, § 619(1) and (2) at 316)).

Even if this Court found that Defendant has demonstrated the existence of a qualified privilege – which it has not – Plaintiffs have raised sufficient factual questions about abuse of the privilege to make dismissal at this stage inappropriate. Plaintiffs argue that "there are myriad issues surrounding whether Defendant abused the qualified privilege that can only be decided by a fact-finder after a record has been developed." ECF No. 18 at 21. Though Plaintiffs do not claim that Defendant published the Binder "excessively," *Williams*, 132 N.J. at 121, they do raise a question of fact about whether he made the Binder statements knowingly or with reckless disregard for truth or falsity by pleading in the complaint that Defendant published the binder "with malice, or, at the very least, fault amounting to negligence." ECF No. 15-2 Ex. A ¶ 47.

Plaintiffs also raise a question of material fact about whether publication of the Binder served "a purpose contrary to the interests of the qualified privilege." *Williams*, 132 N.J. at 121. Though Defendant claims the Binder was intended to help his family members "as to their relations with each other and to the legacy of the family going forward," ECF No. 15 at 22, it is unclear how Defendant's statements that Robert Gregory has a "warped version of reality" and is "bad" and "damaged with little hope of redemption," that Samuel Gregory "destroyed a family" and "cheated" his siblings, and that Christopher Gregory is "weak" and "dead" to Defendant, ECF No. 18 at 22, were expected to serve this purpose. This is not a question for the Court to decide, though. If the Court recognized a qualified privilege, Plaintiffs would need to prove abuse by clear and convincing evidence to the jury. Dismissal at this stage is unwarranted.

NOT FOR PUBLICATION

## CONCLUSION

The complaint adequately alleges defamation. Because Defendant Patric Gregory has not met his burden to demonstrate the existence of a qualified privilege, Defendant's motion for judgment on the pleadings is denied. An appropriate order follows.

DATE: 21 October

William H. Walls
Senior United States District Court Judge