**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT GREGORY, SAMUEL GREGORY, and CHRISTOPHER GREGORY, | Action No. 2:15-cv-0320 (WHW)(CLW) |
| Plaintiffs, | |
| v. | **OPINION & ORDER**[1] |
| W. PATRIC GREGORY, III, | |
| Defendant. | |

**WALDOR, United States Magistrate Judge**

 **THIS MATTER** comes before the Court on the following motions and related filings:

1. Plaintiffs Robert, Samuel, and Christopher Gregory (Plaintiffs) move pursuant to Rule 37(a) of the Federal Rules of Civil Procedure to compel the production of documents withheld by Defendant Patric Gregory III (Defendant) on the basis of relevance, attorney-client privilege, and work product privilege. Defendant cross-moves pursuant to Rule 26(c) for a protective order concerning the information sought.

2. Defendant moves pursuant to Rule 37(a) to compel production of documents withheld by Plaintiffs on the basis of relevance and proportionality.

---

[1] As corrected on November 18, 2016, pursuant to Rule 60(a) of the Federal Rules of Civil Procedure.

3.      Plaintiffs move pursuant to Rule 45(d) to compel compliance with subpoenas issued to third-parties LeClairRyan and Cipolla & Co. Defendant moves to quash the subpoenas and for a protective order.

ECF Nos. 33-40. The Court held oral argument on June 9, 2016 and, for the reasons set forth below, grants the motions in part and denies the motions in part.

## I.      Summary of Allegations and Procedural History

This case arises from allegedly defamatory statements made in the aftermath of an arbitrated dispute among siblings involved in a family business. The parties to this dispute are four of the eight surviving grandchildren of William P. Gregory, Sr., who in 1902 founded New Jersey Galvanizing and Tinning Works, Inc. (NJG), a company "in the business of hot dip galvanizing of structural steel and steel components." Am. Compl. ¶¶ 4-6, 9, ECF Nos. 15-2 and 33-2.[2] The Gregory siblings' father, William P. Gregory, Jr., subsequently took over NJG and operated it until 1982. *Id.* at ¶ 9. In or around 1976, William P. Gregory, Jr. transferred an equal amount of NJG shares to each of his children. *Id.* at ¶ 15. The parties to the transfer entered into an Option Agreement, which provided terms by which NJG could call for the redemption of the transferred shares. *Id.* at ¶ 17. In 1980, Defendant redeemed all of his stock in NJG in connection with his purchase of another galvanizing company, but the remaining Gregory siblings kept their shares. *Id.* at ¶ 19. Plaintiff Robert Gregory has served as President of NJG since 1990. *Id.* at ¶ 1.

## A.      The Stock-Redemption Arbitration

In 2008, Robert Gregory offered to purchase his siblings' outstanding shares of NJG common stock. *Id.* at ¶ 21. Robert withdrew his offer on August 31, 2008 after his siblings failed to respond. *Id.* at ¶ 22. In August 2011, NJG called the outstanding stock in accordance with the

---

[2] The Court's recitation of Plaintiff's allegations does not constitute an acceptance of the truth of any such allegations, although some are undisputed by the parties. *See*, *e.g.*, Answer, at ¶¶ 41-42, ECF No. 7.

Option Agreement. *Id*. at ¶ 23. The Gregory siblings who not parties to this action, i.e., Michael Gregory, Mary Gregory O'Connor, Elizabeth Gregory, and James Gregory (Claimants), then filed suit (the Arbitration) against Plaintiffs and NJG and Five Roses, LLC (another company owned by Robert) alleging, among other things, shareholder oppression and breach of fiduciary duty. *Id*. at ¶ 24. Defendant was not a party to that action. *Id*. at ¶ 7. On June 6, 2013, an arbitrator issued relief against NJG in an Abbreviated Reasoned Decision. *Id*. at ¶ 25.

**B.      The Binder**

In February 2014, Defendant distributed a binder (the Binder) to fifteen members of the Gregory family describing his "fact-based take" on his siblings' stock-redemption dispute and the Arbitration. *Id.* at ¶ 39-41. Defendant also distributed the Binder to several people outside the Gregory family, including Attorney Michael Haratz, Joseph Cipolla, Roger Gesswein, and Real O. Roy. Denner Decl. Ex. D at 2-3, Apr. 8, 2016, ECF No. 33-2. The Binder included various statements that Plaintiffs claim are false and defamatory, including that:

> a) Plaintiffs engaged in a "persistent pattern of malfeasance, deceit, and self-dealing,"
> b) Plaintiffs "engaged in business practices that have bordered on criminal,"
> c) "In order to pay as little as possible to Claimants for the redemption of their share, the Management of [NJG] deliberately violated financial and accounting conventions— and the law—in an effort to understate the company's value,"
> d) "[Five Roses LLC] became a convenient conduit to funnel assets out of NJG and into a parallel firm owned and controlled exclusively by Robert and his handpicked confederate,"
> e) [Five Roses LLC and NJG] are one in the same . . . [e]xcept when it comes to hide assets,"
> f) "The only reason these transfers were made was to depress the reported value of NJG and thereby depress the value of the redemption of shares,"
> g) "The bookkeeping for both companies was designed to deceive," and "[accounting entries] were 'made up,' with no support whatsoever, all in an effort to depress and conceal the true value of NJG," and
> h) Robert was guilty of accepting an "illegal kickback" from a business called USA Iron.

Am. Compl. ¶ 42 (brackets and quotations in original).

3

**C.    The Instant Defamation Action**

On December 24, 2014, Plaintiffs filed a one-count complaint against Defendant in the Superior Court of New Jersey, Essex County, Law Division alleging defamation stemming from Defendant's allegedly false and defamatory statements in the Binder. Compl., ECF No. 1-2. On January 16, 2015, Defendant removed the action to this Court. Notice of Removal, ECF No. 1. On March 4, 2015, Defendant filed an Answer asserting fourteen affirmative defenses, which include claims that the statements in the Binder are protected by conditional or absolute privileges.[3] Answer, ECF No. 7. On July 31, 2015, Defendant filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that his statements are protected by a qualified "common-interest" privilege. Mot. Dismiss, ECF No. 15. On October 21, 2015, The Honorable William H. Walls, U.S.D.J., denied Defendant's motion. *Gregory v. Gregory*, 2015 WL 6408016 (D.N.J. Oct. 21, 2015), ECF No. 22. The District Judge held that a qualified privilege was unavailable based on the face of the complaint, but left open the possibility that such a privilege could be established as the case progresses. *Id*. at 9-13.

**D.    Defendant's Role in the Arbitration and His Relationship with Attorney Michael Haratz and Joseph Cipolla**

Claimants were represented in the Arbitration by LeClairRyan, with Michael Haratz serving at lead counsel. Pls.' Br. Supp. Mot. Compel 4, ECF No. 33-5. Joseph Cipolla, Jr. of Cipolla & Co., LLC, acted as an expert witness concerning the valuation of the Claimants' equity interests in NJG. *Id*. Defendant did not have any communications with Attorney Haratz or Mr. Cipolla until March 2013. Def.'s Opp'n 8-10, ECF No. 35-1. Defendant asserts that he decided to testify as an expert on behalf of Claimants in the Arbitration after receiving a call from Mr. Cipolla

---

[3] The Answer refers to the Amended Complaint, which is the operative pleading in this matter but does not have its own docket entry; the Amended Complaint appears at ECF Nos. 15-2 and 33-2.

and conducting an investigation into the circumstances surrounding the dispute. *Id*. Defendant claims that the arbitrator did not permit Defendant to testify because Claimants were late in identifying him and because he did not submit an expert report. *Id*. at 10 n.2. Plaintiffs, on the other hand, allege that Defendant was actually offered as a fact witness, and note that Defendant appears on a document submitted during the Arbitration entitled "Claimants Updated List of Fact Witnesses." Denner Decl. Ex. B at 3, Apr. 29, 2016, ECF No. 39-1. Mr. Cipolla did not mention Defendant in the expert report he produced in the Arbitration, except in noting that Defendant purchased Highway Safety, Corp. from NJG in 1980. Pls.' Br. Supp. Mot. Compel 4, ECF No. 33-5; Denner Decl. Ex. E at 14, Apr. 8, 2016, ECF No. 33-2.

Defendant made several payments to LeClairRyan and Mr. Cipolla for services rendered in the Arbitration, including:

a) $63,205.12 to Mr. Cipolla between June 12, 2013 and October 1, 2013;
b) $202,151.64 to LeClairRyan between August 23, 2013 and March 18, 2015; and
c) $245,204.83 to the Arbitration Claimants.

Pls.' Br. Supp. Mot. Compel 4, ECF No. 33-5; Denner Decl. Exs. O-Q, Apr. 8, 2016, ECF No. 33-2. In December 2013, Defendant retained LeClairRyan in connection with the Binder. Def.'s Opp'n 10, 16, ECF No. 35-1. Defendant claims that he had "completed or largely completed" the Binder before retaining LeClairRyan and that LeClairRyan did not assist in the Binder's preparation. *Id*. at 10, 16. Attorney Haratz, now with Haratz Law, LLC, represents Defendant in this action.

II.   **Plaintiffs' Motion to Compel and Defendant's Cross-Motion for a Protective Order**

A.   **Legal Standard**

1.   *Rule 37(a) Motion to Compel*

A party seeking discovery may move to compel production if another party "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). Motions to compel discovery fall within the sound discretion of the Court. *Drippe v. Tobelinski*, 604 F.3d 778, 783 (3d Cir. 2010) (citing *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817-18 (3d. Cir. 1982)).

A party objecting to a discovery request must specifically state the grounds for its failure to respond. *Harcum v. Leblanc*, 268 F.R.D. 207, 209-10 (E.D. Pa. 2010) at 210 (citing *Joseph v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)). The objecting party must further specifically identify any responsive materials that are being withheld on the basis of that objection. Fed. R. Civ. P. 34(b)(2)(C); *Scranton Products, Inc. v. Bobrick Washroom Equip., Inc.*, 2016 WL 3193482, at *12 (M.D. Pa. June 3, 2016). After a properly asserted objection, the party seeking discovery has the burden to show that the discovery falls within the ambit of Rule 26. *Harcum*, 268 F.R.D. at 210 (citing *Momah v. Albert Einstein Medical Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996)).

2.   *Rule 26(c) Motion for Protective Order*

Like orders issued under Rule 37(a), the decision whether to issue a protective order is within the sound discretion of this Court. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-91 (3d Cir. 1994)). A protective order may restrict the extent or manner of discovery where necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (citing Fed. R. Civ. P. 26(c)).

The party seeking the protective order must typically demonstrate good cause to limit discovery. *Pansy*, 23 F.3d at 786. However, Rule 26(c) requires no additional showing of good cause unless the party seeking discovery first demonstrates relevance. *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 195 (D.N.J. 2010), *aff'd*, 2010 WL 3724271 (D.N.J. Sept. 15, 2010). Once relevance is established, the party seeking protection can satisfy its burden by showing that an evidentiary privilege protects the information sought. *See O'Blenis v. Nat'l Elevator Indus. Pension Plan*, 2015 WL 3866229, at *4 (D.N.J. 2015) (issuing protective order based on attorney-client privilege).

3.   *Scope of Discovery*

Under Fed. R. Civ. P. 26(b)(1), a party has the right to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Relevance "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Green v. Cosby*, 314 F.R.D. 164, 171 (E.D. Pa. 2016). However, a party does not have an unlimited right to discovery, and access may be constrained under certain circumstances. *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

The scope of discovery in this matter therefore encompasses any nonprivileged matter related to Plaintiffs' defamation claim or any of Defendant's affirmative defenses. To prove their case, Plaintiffs must show "(1) that [D]efendant[ ] made a false and defamatory statement concerning [Plaintiffs]; (2) that the statement was communicated to another person (and not privileged); and (3) that [D]efendant[] acted negligently or with actual malice." *Gregory*, 2015 WL 6408016, at *3 (citing *G.D. v. Kenny*, 15 A.3d 30 (N.J. 2011)). To determine whether a

7

statement is defamatory, the Court must "consider the content, verifiability, and context of the challenged statement[ ]." *Id.* (citing *Murphy v. Millennium Radio Group LLC*, 650 F.3d 295, 310 (3d Cir. 2011)).

Defendant contends that the statements in the Binder are protected by privilege. Answer 12, ECF. No. 7. New Jersey recognizes a qualified "common-interest" privilege that applies to any "communication made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable." *Gregory*, 2015 WL 6408016, at *3 (quoting *Professional Recovery Services, Inc. v. General Elec. Capital Corp.*, 642 F. Supp. 2d 391, 400 (D.N.J. 2009)). To determine whether a qualified privilege applies, the Court looks to "(1) the appropriateness of the occasion on which the defamatory information is published, (2) the legitimacy of the interest thereby sought to be protected or promoted, and (3) the pertinence of the receipt of that information by the recipient." *Id.* (quoting *Professional Recovery Services*, 642 F. Supp. 2d at 400). Further, even if a "common-interest" privilege applies, it can be lost through abuse if "(1) the publisher knows the statement is false or the publisher acts in reckless disregard of its truth or falsity; (2) the publication serves a purpose contrary to the interests of the qualified privilege; or (3) the statement is excessively published." *Id.* (quoting *Williams v. Bell Tel. Lab., Inc.*, 623 A.2d 234 (N.J. 1993)).

**B.    Disputed Documents Requests**[4]

1.    *Electronic Communications Between Defendant and Attorney Haratz, LeClairRyan, Joseph Cipolla, Jr., and/or Cipolla & Co., LLC and all Documents Representing, Referring, or Relating to Those Communications (Plaintiffs' Document Requests Nos. 14-17).*

Defendant objects to these requests on the basis of relevance, attorney-client privilege, and work product.

a.    <u>Relevance</u>

Plaintiffs assert that these documents are relevant to (1) Defendant's intent in creating the Binder, (2) the applicability of the "common-interest" privilege asserted by Defendant, (3) whether Defendant was in privity with Claimants and thus estopped from re-litigating findings made in the arbitration, and (4) Defendant's credibility. Pls.' Br. Supp. Mot. Compel 20, ECF No. 33-5. More specifically, Plaintiffs contend that the documents directly relate to the circumstances surrounding the Binder's creation, including when Defendant decided to create Binder; with whom Defendant consulted; what information Defendant relied on; Defendant's role in the Arbitration; Defendant's interest in the Arbitration; Defendant's "alliance with the Claimants"; and Defendant's "bias against Plaintiffs." Pls.' Reply 5, ECF No. 39. Plaintiffs claim that these circumstances are critical to Defendant's assertion of a "common-interest" privilege. *Id*. Defendant does not specifically address these claims, except to state that the documents do not relate to the truthfulness of the statements in the Binder.[5] Def.'s Opp'n 6, 31, ECF No. 35-1.

---

[4] In addition to seeking documents, Plaintiffs' motion also argues that Defendant's privilege logs are deficient under Fed. R. Civ. P. 26(b)(5). Pls.' Br. Supp. Mot. Compel 16-18, ECF No. 33-5. Defendant has since supplemented these logs, Suppl. Sun Decl. Ex. D, Apr. 22, 2016, ECF No. 35-2, and that issue appears to be moot. Pls.' Reply 3, ECF No. 39. Plaintiffs' grievances concerning Defendant's classification of certain documents as privileged will be addressed below.

[5] Defendant does however contend that, with regard to the issues of intent and privity, the requested documents do not have "sufficient relevance or probative value" to pierce any applicable attorney-client privilege. Def.'s Opp'n 30, ECF No. 35-1. As set forth below, no attorney-client privilege applies so the Court need not address this argument.

Consistent with Plaintiffs' arguments on this point, the Court finds that the requested documents plainly are relevant as to the truth of the Binder's contents and likewise relate to or could reasonably lead to another matter that relates to the issues of intent and the "common-interest" privilege. *Oppenheimer Fund*, 437 U.S. at 351 (1978). Accordingly, the documents must be produced unless a privilege applies.

b.     Attorney-Client Privilege and Work Product

This Court sits in diversity and therefore must apply New Jersey law to determine issues of attorney-client privilege. Fed. R. Evid. 501; *In re Human Tissue Products Liab. Litig.*, 255 F.R.D. 151, 156 (D.N.J. 2008) (citing *In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997)). New Jersey's attorney-client privilege attaches to communications made between lawyers and clients "in the course of that relationship and in professional confidence." N.J.S.A. 2A:84A–20; N.J.R.E. 504; *Hedden v. Kean Univ.*, 82 A.3d 238, 244 (N.J. Super. App. Div. 2013). All communications made in the lawyer-client relationship are presumed to have been made in professional confidence. *Hedden*, 82 A.3d at 244 (citing N.J.R.E. 504(3)). However, "[b]ecause the privilege may be employed to obstruct the search for truth, the privilege is not absolute and care must be taken to insure that the privilege is not abused." *Orion Corp. v.  Sun Pharm. Indus., Ltd.*, 2010 WL 686545, at *8 (D.N.J. Feb. 22, 2010) (citing *United Jersey Bank v. Wolosoff*, 483 A.2d 821 (N.J. Super. App. Div. 1984)). Defendant has the burden of proving the attorney-client privilege applies to the communications at issue. *Hedden*, 82 A.3d at 245.

Though the privilege is not limited to legal advice, it extends only to "situations in which lawful legal advice is the object of the relationship." *O'Boyle v. Borough of Longport*, 94 A.3d 299, 309 (N.J. 2014). Ordinarily, disclosure of an otherwise protected communication to a third-party waives the privilege. *Id.* (citing *Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650 (N.J.

2010)). However, the privilege survives if disclosure to the party is "necessary to advance the representation." *Id.* (citing *Rawlings v. Police Dep't of Jersey City*, 627 A.2d 602 (1993)). New Jersey courts have applied this "necessary communications" doctrine to experts and consultants hired to assist an attorney's representation. *Tractenberg v. Twp. of W. Orange*, 416 N.J. Super. 354, 376, 4 A.3d 585, 598 (App. Div. 2010) (citations omitted). On the other hand, the privilege does not extend to fact witnesses. *See Wagi v. Silver Ridge Park W.*, 580 A.2d 1093, 1100 (N.J. Super. Law. Div. 1989).

Unlike issues of attorney-client privilege, a uniform federal work product doctrine applies even in diversity cases. *Human Tissue Products*, 255 F.R.D. at 157 (citing *United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir. 1988)). Fed. R. Civ. P. Rule 26(b)(3) sets forth a three step analysis to determine whether the work product doctrine applies, and thus protects certain documents from discovery. First, the doctrine attaches to (1) documents and tangible things that (2) are prepared in anticipation of litigation (3) by or for another party or its representative. Fed. R. Civ. P. 26(b)(3)(A). Second, the seeking party can override the protection by showing (1) the documents are otherwise discoverable, (2) the party has a substantial need for the materials, and (3) the party cannot obtain a substantial equivalent without undue hardship. *Id.*; *Memory Bowl v. N. Pointe Ins. Co.*, 280 F.R.D. 181, 186 (D.N.J. 2012) (citing *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003)). Finally, there is near absolute protection for the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B); *Memory Bowl*, 280 F.R.D. at 186 (citing *Cendant Corp.*, 343 F.3d at 663). In contrast to waiver of attorney-client privilege, "disclosure to a third party does not necessarily waive the protection of the work-product doctrine." *In re Chevron*

11

*Corp.*, 633 F.3d 153, 165 (3d Cir. 2011) (citation omitted). The doctrine is only waived if "material is disclosed in a manner inconsistent with keeping it from an adversary" *Id.* (citation omitted).

Defendant has produced two privilege logs identifying documents he is withholding on the basis of attorney-client or work-product privilege. The first relates to privilege arising from this suit ("Defendant's Log," Denner Decl. Ex. U, Apr. 8, 2016, ECF No. 33-3), while the second relates to privilege arising from the Arbitration ("Claimants' Log," *Id.* at Ex. V). The parties have broken down the disputed documents into three categories, which are addressed in turn.

    i.  <u>Communications between Defendant and Attorney Haratz, LeClairRyan, Joseph Cipolla, Jr., and/or Cipolla & Co., LLC concerning the representation of Claimants in the Arbitration prior to entry of the Award on June 6, 2013</u>

Defendant claims that these communications are protected by the attorney-client privilege held by Claimants and further asserts that his involvement in the communications did not constitute a third-party waiver based on the "necessary communications" doctrine. Def.'s Opp'n 20, ECF No. 35-1. These communications are only privileged if Defendant can show he was "necessary to advance the representation" of the Claimants in the Arbitration, as defined by New Jersey law. *O'Boyle*, 94 A.3d at 309. The Court finds that Defendant has failed to meet his burden in this regard. The parties disagree on Defendant's role in the Arbitration, and the only piece of evidence properly before the Court indicates that Defendant was offered as a fact witness, and not an expert witness.[6] Denner Decl. Ex. B at 3, Apr. 29, 2016, ECF No. 39-1. Therefore, the attorney-client privilege was waived as to any communications including or copying Defendant. *See Wagi*, 580 A.2d 1093, 1100; *O'Boyle*, 94 A.3d at 309.

---

[6] The Court makes no findings of fact concerning Defendant's role in the Arbitration, and merely holds that Defendant has not met his burden of showing that the attorney-client privilege applies. *See Hedden*, 82 A.3d at 245.

Defendant also asserts that these communications are protected by the work product doctrine.[7] Based on a review of the Claimants' Log, the Court agrees that the disputed communications dated June 6, 2013 were likely intended for use in Arbitration by or for the Claimants or their representatives, Attorney Haratz and Mr. Cipolla. Therefore, the work product doctrine applies unless Plaintiffs can show that they have a substantial need for the materials and cannot obtain a substantial equivalent without undue hardship. *Memory Bowl*, 280 F.R.D. at 186.

Though Plaintiffs have demonstrated that the documents are discoverable under the broad relevance standard of Rule 26(b)(1), they have not made the requisite showing that their need for these communications is "substantial" or that they cannot obtain the information therein by a less intrusive means. *See F.T.C. v. Boehringer Ingelhein Pharm., Inc.*, 778 F.3d 142, 155 (D.C. Cir. 2015), *cert denied*, 136 S.Ct. 925 (2016) (citations omitted) ("burden is generally met if [party] demonstrates that the materials are relevant to the case, the materials have a unique value apart from those already in the [party]'s possession, and "special circumstances" excuse the [party]'s failure to obtain the requested materials itself.")

Finally, since Claimants and their representatives did not disclose the communications "in a manner inconsistent with keeping it from an adversary," they did not waive work product protection by involving Defendant. *Chevron Corp.*, 633 F.3d at 165. Accordingly, a protective order shielding documents numbered 2-9, 11-17, 19-20, and 23-24 in Claimants' Log is appropriate, but only to the extent that those documents concern the Arbitration. To the extent that the documents contain any other information, they must be appropriately redacted and produced

---

[7] If otherwise properly asserted, "work-product protection applies to documents prepared for a different case so long as the two cases are closely related in parties or subject matter." *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 309 (D.N.J. 2008).

by Defendant. This includes information not protected by the work product privilege that otherwise

may have been protected by the attorney-client privilege had it not been waived.

   ii.   Communications between Defendant and Attorney Haratz, LeClairRyan, Joseph Cipolla, Jr., and/or Cipolla & Co., LLC after June 6, 2013 concerning the representation of Claimants in the post-Arbitration confirmation proceedings.

   As to attorney-client privilege, the Court again holds that Defendant has failed to meet his

burden. In addition to the reasoning set forth above, the Court agrees with Plaintiffs in that there

has been no showing that Claimants' attorney would have reason to consult Defendant after the

Arbitration Award had been entered. Pls.' Reply 8, ECF No. 39. The post-Arbitration proceedings

primarily concerned a purported ambiguity in the terms of the Award. *See Gregory v. Gregory*, A-

1490-13T2, at 21-24 (N.J. Super. App. Div. Apr. 16, 2015), ECF No. 33-2. Defendant's expertise

concerning the galvanizing industry would hardly have been "necessary to advance" the Claimants

representation in this regard. Again, the necessary communications doctrine does not apply, and

the attorney-client privilege was waived as to any communication on which Defendant was

included or copied.

   As to work product, the Court's above analysis concerning the pre-Award communications

applies here as well. Thus, a protective order is appropriate for documents numbered 25-35, 37-

64, 73-75, 77-78, 86-144, 146-174, 176-199, 201-220, 222-240, 242, 244-248, 250-252, 254-370,

and 373-399 in Claimants' Log, but only to the extent that those documents concern the

Arbitration, the post-Arbitration proceedings in the New Jersey Superior Court, or the current

lawsuit. To the extent that the documents contain any other information, they must be appropriately

redacted and produced by Defendant.

iii.    Communications in and after December 2013 between Defendant and Joseph Cipolla and/or Cipolla & Co., LLC concerning the creation and content of the Binder.

Unlike the previous two categories, Defendant holds any applicable attorney-client privilege covering these communications, and the inquiry is whether disclosure to Mr. Cipolla waived the privilege. Again, Defendant has failed to show that the "necessary communications" doctrine applies. Other than a single statement that that these communications "are similarly shielded from discovery," Def.'s Opp'n 29-30, ECF No. 35-1, Defendant makes no indication if or how Mr. Cipolla was necessary to advance his representation. Indeed, the only information Defendant gives concerning the nature of that representation is an assertion that his attorney did not assist in the Binder's preparation. *Id.* at 10, 16. The "necessary communications" doctrine therefore does not apply, and the attorney-client privilege was waived as to any communication on which Mr. Cipolla was included or copied.

As to work-product, the Court finds that these communications were not "prepared in anticipation of litigation" and are thus are not protected. Fed. R. Civ. P. 26(b)(3)(A). The communications being withheld date back to January 2014, eleven months before this suit was filed. Denner Decl. Ex. U, Apr. 8, 2016, ECF No. 33-2. Although the communications relate to the preparation of the Binder now the subject of this litigation, "[t]he mere fact that litigation eventually ensues does not, by itself, cloak materials . . . with the protection of the work product privilege." *Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1118 (7th Cir. 1983); *see also Leonen v. Johns–Manville,* 135 F.R.D. 94, 97 (D.N.J. 1990) ("the mere fact that litigation does eventually occur, does not by itself bring documents within the ambit of the work-product doctrine.") Defendant has made no showing that these communications were made for any purpose other than the preparation and publication of the Binder. Consequently, Defendant must produce documents numbered 24, 30, 35-40, 42, 46-48, and 53-54 in Defendant's Log.

2.      *Documents Representing, Relating or Referring to Contracts or Agreements Between or Among Defendant and Claimants Relating to the Arbitration (Plaintiffs' Document Request No. 6)*

Plaintiffs argue that that these documents are relevant to "further clarify Defendant's role and interest in [the Arbitration]," and to permit further inquiry as to whether Defendant's status as a competitor had any impact on either the financing of Claimants' case, or his publication of the Binder. Pls.' Br. Supp. Mot. Compel 25-26, ECF No. 33-5. Defendant does not specifically object to this request in his opposition papers, and the Court finds that this request relates to the intent element of Plaintiffs' defamation claim. Plaintiffs assert that "Defendant has produced promissory notes between each of the Claimants and him, as well as the consideration for those promissory notes," but Defendant has not produced any documents "representing, referring, or relating" to any agreements made by Defendant to cover the costs and expenses of the Arbitration. Pls.' Reply 2-3, ECF No. 39. Defendant therefore must produce the requested documents or certify that none exist.

### III.     Defendant's Motion to Compel

### A.     Disputed Document Requests

1.     *Documents, other than the Arbitration Award and Abbreviated Reasoned Decision, demonstrating statements in the Binder are defamatory, and various other documents related to issues already decided at the Arbitration (Defendant's Document Requests Nos. 11, 24, 25, 28, 29, 34, 35, 36, 41-51).*

Plaintiffs first argue that the documents withheld are not relevant to this case because they relate to issues that Defendant is estopped from litigating. Pls.' Opp'n 2, ECF No. 36. In essence, Plaintiffs allege that Defendant was in privity with Claimants and thus is precluded from re-litigating any issue decided in the Arbitration. *Id.* By seeking to withhold discovery on the basis of preclusion, Plaintiffs are asking the Court to rule on the merits of their Complaint without a complete record or an appropriate motion. The Court declines to do so at this stage, and Plaintiffs do not cite any authority giving it the right to withhold documents based on an unproven theory of preclusion. As such, Plaintiffs' objection on relevance grounds is not "properly asserted." *Harcum*, 268 F.R.D. at 210.

Plaintiffs next request that they "be permitted to fully explore the details of the privity claim before being asked to produce the documents." Pls.' Opp'n 5, ECF No. 36. This request, which essentially seeks a bifurcation of discovery, is not properly before the court. Regardless, the Court is not convinced that bifurcating the issue would "expedite and economize" the case or prevent prejudice to one or more parties. *See* Fed. R. Civ. P. 42(b); *Loreaux v. ACB Receivables Mgmt., Inc.*, 2015 WL 5032052 (D.N.J. Aug. 25, 2015). Plaintiffs' request is therefore denied.

In addition to their objection on relevance grounds, Plaintiffs argue that these requests are not proportional to the needs of this case because all responsive documents were already produced to Attorney Haratz or inspected by Joseph Cipolla during the Arbitration. Pls.' Opp'n 2, ECF No. 36. Discovery material must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The Court may limit the discovery of relevant information if the documents sought are "unreasonably cumulative or duplicative" or can be obtained from a more convenient source. Fed. R. Civ. P. 26(b)(2)(C)(i); *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Discovery may be similarly limited if the burden of a request will likely outweigh its benefits, taking into consideration "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *Takacs v. Union Cty.*, 2009 WL 3048471, at *1 (D.N.J. Sept. 23, 2009).

Beyond their vague representation that certain documents were produced in the Arbitration, Plaintiffs do not present any specific facts concerning those documents or their alleged prior production. The Court will not issue a blanket order precluding relevant discovery based on such an objection when there is no way of telling what documents are being withheld or when the documents were produced. In addition to these practical issues, Plaintiffs objection does not comply with the Federal Rules, which require an objecting party to specifically identify any documents being withheld. Fed. R. Civ. P. 34(b)(2)(C); *Scranton Products, Inc.*, 2016 WL 3193482, at *12. Finally, Plaintiffs have made no argument that they would be burdened by producing these documents. *See In re Subpoena to Rehberger*, 2013 WL 2243081, at *4 (D.N.J. May 21, 2013) (dismissing objection that discovery was "unreasonably duplicative" because responding party did not show she would be burdened by potentially repetitive testimony).

Accordingly, it must be concluded that Plaintiffs objections to Defendants' Document Requests numbered 11, 24, 25, 28, 29, 34, 35, 36, and 41-51 are without merit. Plaintiffs are ordered to produce all documents being withheld in response to these requests or certify that none exist.

2. *NJG QuickBooks general ledgers in native format for all of the years in which they exist between 2006 and 2013 (Defendant's Document Request No. 39)*

Plaintiffs object to this request on relevance and proportionality grounds. As to relevance, Plaintiffs make two arguments. First, Plaintiffs contend that Defendant's "conclusions" in the Binder were drawn from expert reports submitted as evidence in the Arbitration, which were partially based on NJG QuickBooks through March 2013. Pls.' Opp'n 8, ECF No. 36**.** Therefore, they argue, the QuickBooks beyond this date have no relevance to the truth of statements contained in the Binder. *Id*. Defendant does not specifically respond to this argument, but argues that the QuickBooks generally relate to statements in the Binder alleging financial management and tax accounting improprieties at NJG. Def.'s Reply 8, ECF No. 40. The Court agrees with Defendant in that the financial improprieties alleged in the Binder extend beyond the time period contemplated by the Arbitration. *See* Binder 23, ECF No. 15-2 ("Robert established a pattern of claiming as business expenses personal items completely unrelated to business. . . . This pattern of payments continued from October 2012 to July 2013.") The NJG QuickBooks through July 2013 are therefore relevant to this litigation.

Plaintiffs additionally argue that the documents are not relevant because Defendant "should be estopped from re-litigating those matters conclusively decided in the Arbitration" Pls.' Opp'n 9, ECF No. 36. For the reasons set forth above, this argument lacks merit.

Plaintiffs make three discernible arguments contending that discovery should be limited on proportionality grounds. First, Plaintiffs argue that the requested QuickBooks were produced in the prior arbitration. *Id*. at 8. Again, Plaintiffs have not certified to any facts concerning the prior production, and the Court will not preclude discovery on this ground.

Second, Plaintiffs contend that they should not be required to produce the QuickBooks in native format because they already produced them in static format in this litigation. *Id*. "A party

need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(b)(1)(E)(iii). However, "[a] document request may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). "[I]t is not a valid ground for objection that relevant, non-privileged, electronic data can be produced in paper form, when the requesting party has specified production in an electronic format." *Jaso v. Bulldog Connection Specialists LLC*, 2015 WL 11144603, at *6 (S.D. Tex. Oct. 15, 2015) (citations omitted); *see Rowe Entm't, Inc. v. William Morris Agency, Inc.,* 205 F.R.D. 421, 428 (S.D.N.Y. 2002). Defendant specifically requested the QuickBooks in native format, and Plaintiffs must respond accordingly.

Finally, Plaintiffs argue that producing the QuickBooks in native format "is a burdensome process that may require the retention of an outside vendor" and indicate that they will consent to production if Defendant assumes the expenses. Pls.' Opp'n 8, ECF No. 36. Generally, the party responding to discovery must bear the expense of complying with a discovery request. *Juster Acquisition Co., LLC v. N. Hudson Sewerage Auth.*, 2013 WL 541972, at *3 (D.N.J. Feb. 11, 2013) (citing *Zubulake v. UBS Warburg LLC,* 216 F.R.D. 280, 283 (S.D.N.Y. 2003)). Shifting the cost of discovering electronic information is only appropriate when a party is seeking data that it not reasonably accessible without undue burden or expense on the responding party. *Id*. Plaintiffs bear the burden of persuading the Court that the information sought is not reasonably accessible. Fed. R. Civ. P. 26(b)(2)(B); *Bagley v. Yale Univ.*, 307 F.R.D. 59, 65 (D. Conn. 2015). Plaintiffs have not satisfied their burden. Beyond stating that the production may require the use of an outside vendor, Plaintiffs have not submitted any evidence concerning the cost of retrieving the QuickBooks, much less evidence showing that the cost would be "excessive or unwarranted." *Bagley*, 307 F.R.D. at 65. Plaintiffs are ordered to produce NJG QuickBooks general ledgers in

native format for all of the years in which they exist between 2006 and July 2013, with the parties being advised to meet and confer regularly with respect to scheduling and logistics so as to minimize the expenses incurred; the Court may later entertain particularized submissions regarding any burden or other good cause to warrant cost-shifting, provided the parties properly follow Local Civil Rules 16.1 and 37.1.

3.     *NJG's Bank Statements and Cancelled Checks from 2006-2013*

Defendant requests "access to cancelled checks and bank statements of NJG for . . . 2006 through 2013. Def.'s Br. Supp. Mot. Compel 8-9, ECF No 34-1. Plaintiffs ask that the Court deny Defendant's request for the same reasons outlined in their objection to producing the QuickBooks. Pls.' Opp'n 9, ECF No. 36. Based on the reasoning set forth above, Plaintiffs are ordered to permit the inspection of NJG's bank statements and cancelled checks from 2006 to July 2013.

4.     *Documents Relating to Plaintiffs' Damages (Defendant's Document Request No. 16)*

Plaintiffs do not object to this request and produced responsive documents after the instant motions were filed. *Id*.; Denner Decl. Ex. A, Apr. 22, 2016, ECF No. 36-1. To the extent they have not already done so, Plaintiffs are ordered to turn over any remaining documents responsive to this request or certify that none exist.

5.     *Documents Relating to USA Iron Inc. (Defendant's Document Requests No. 22 & 23)*

Plaintiffs do not object to these requests, but state that all responsive documents have already been produced. Pls.' Opp'n 6, ECF No. 36. Defendant contends that there may be more documents that Plaintiffs have not produced. Def.'s Reply 13, ECF No. 40. Specifically, Defendant requests "documentation reflecting the acquisition/disposition of stock in USA Iron." *Id*. Plaintiffs are ordered to turn over any remaining documents responsive to this request or certify that none exist.

6.  *Robert Gregory's State and Federal Personal Income Tax Returns for 2006-2013 (Defendant's Document Requests No. 26, 27, 30, 31)*

Plaintiffs have produced Robert Gregory's tax returns for 2011, but object to production of the other requested returns on relevance grounds. Pls.' Opp'n 6-7, ECF No. 36. "Public policy favors the nondisclosure of income tax returns." *Robinson v. Horizon Blue Cross-Blue Shield of New Jersey*, 2013 WL 6858956, at *3 (D.N.J. Dec. 23, 2013), *aff'd*, 2014 WL 3573339 (D.N.J. July 21, 2014) (citing *DeMasi v. Weiss,* 669 F.2d 114, 119 (3d Cir. 1982)). When contemplating a motion to compel production of tax returns, this Court applies a two-part test to balance the tax payer's privacy expectations and the liberal discovery policy of the Federal Rules of Civil Procedure. *Id*. (citing *Farmers & Merchants Nat'l Bank v. San Clemente Fin. Group Sec.*, 174 F.R.D. 572, 585 (D.N.J.1997). First the Court determines whether the tax returns are relevant to the litigation. *Id*. If so, the objecting party can avoid disclosure by showing the availability of reliable financial information from other sources. *Farmers & Merchants*, 174 F.R.D. at 585.

Defendant argues that the tax returns bear on the truth of statements made in the Binder concerning unaccounted compensation allegedly paid to Robert Gregory. Def.'s Br. Supp. Mot. Compel 16, ECF No 34-1. Page 23 of the Binder provides:

> Payroll records have not matched [Robert Gregory's] personal W-2s and those of a favored few, including his brother. In fiscal year ending March 31, 2013 alone, for example, he paid about $604,000 to himself ($225,000) and to other "W-2" employees ($379,000) from NJ G's operating account (not its regular payroll account), thereby circumventing federal and state tax withholding requirements and FICA payment and reporting obligations. Then in April 2013, NJG paid Robert another $125,000, again circumventing payroll services and therefore required tax withholding. In addition to this $350,000 for the first seven months of 2013, payroll records show that NJG paid Robert a salary of $76,000- not only additional compensation but also a fig leaf to disguise his main source of personal income.
> …

22

> In addition, for the fourteen years ending 2012, Robert's unreported compensation included matches to his 401(k) account and nearly $280,000 in premiums for life insurance coverage and ownership (through fiscal year ended March 31, 2013) that have benefited NJG in no way whatsoever.

Binder 23, ECF No. 15-2. The Court agrees that the requested tax returns directly relate to the truth of the above statements. Plaintiff has not made any showing that reliable financial information is available from other sources, other than stating that "Form W-2s for 2006-2010 were already produced in [the Arbitration]." Pls.' Opp'n 7, ECF No. 36. Again, the Court will not preclude discovery on that basis. For the reasons set forth above, Plaintiffs are ordered to produce Robert Gregory's State and Federal Personal Income Tax Returns for the years 2006-2013.

7.    *Life Insurance Policies and Declarations (Defendant's Document Request No. 40)*

Plaintiffs produced documents responsive to this request after the instant motions were filed. *Id.*; Denner Decl. Ex. A, Apr. 22, 2016, ECF No. 36-1. Plaintiffs are ordered to turn over any remaining responsive documents or certify that none exist.

## IV.    Plaintiffs' Motion to Compel Compliance with Subpoenas and Defendant' Motion to Quash

Finally, as to the subpoenas issued by Plaintiff to LeClairRyan and Cipolla & Co.,[8] the Court will stay the subpoenas based on Defendant's representation that documents responsive to the subpoenas are or will be in Defendant's possession. Def.'s Br. Supp. Mot. Compel, 2-3, ECF No 34-1 (citing Sun Decl., Exs. D-F). Subject to valid assertions of privilege and consistent with this Order as well as the parties' obligations under the Federal Rules of Civil Procedure, the third parties therefore need not respond to the subpoenas, with Plaintiffs permitted to seek leave of Court to lift this stay upon a showing of good cause and after seeking such documents from Defendant.

---

[8] Both non-parties indicated that they joined Defendants' positions and "will abide by the directives of the Court on these applications." Letters, ECF Nos. 37-38.

V.      **Conclusion**

In light of the foregoing, the pending motions are granted in part and denied in part, with the parties afforded forty-five (45) to comply with this Order. The Court will hold a teleconference, to be initiated by Plaintiffs, on Friday, November 18, 2016 at 12:30 PM.

**ACCORDINGLY, IT IS** on this 17th day of October, 2016,

**ORDERED** that the parties' motions (ECF Nos. 33, 34, 35) are denied in part and granted in part; and

**ORDERED** that third parties LeClairRyan and Cipolla & Co. need not respond to the subpoenas absent further Order from this Court; and

**FURTHER ORDERED** that the Clerk shall terminate ECF Nos. 33, 34, and 35.

_s/Cathy L. Waldor_____
**CATHY L. WALDOR**
**United States Magistrate Judge**